J-S51043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  T.K.A., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  S.W., NATURAL MOTHER | No. 809 EDA 2015 |

Appeal from the Decree February 12, 2015
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-AP-0000071-2005
FID: 51-FN-459933-2009

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED OCTOBER 05, 2015**

S.W. (Mother) appeals the decree of the Court of Common Pleas of Philadelphia County, entered February 12, 2015, that terminated her parental rights to her daughter, T.K.A. (Child), born in March of 2013, and changed Child's goal to adoption.  We affirm.[1]

On March 11, 2013, Philadelphia's Department of Human Services (DHS) received a substantiated General Protective Services report that both Mother and Child tested positive for cocaine at Child's birth.  DHS recommended that Mother go to Girard Medical Center for a drug and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court also terminated the parental rights of Child's unknown father.

alcohol evaluation after she admitted to a history of drug use. Mother identified Child's maternal aunt, I.D. (Maternal Aunt), as a placement resource for Child. Mother did not seek any drug and alcohol treatment at the time, and her whereabouts became unknown to DHS.

DHS obtained an Order of Protective Custody for Child on April 15, 2013. The trial court temporarily committed Child to DHS at a shelter care hearing on April 17, 2013. Child remained in the care of Maternal Aunt. The trial court adjudicated Child dependent and committed her to the care and custody of DHS on April 25, 2013.

DHS held a Family Service Plan (FSP) meeting on September 13, 2013. Mother's FSP objectives were: 1) complete a parenting education program; 2) maintain appropriate housing; 3) comply with the Clinical Evaluation Unit (CEU) drug and alcohol treatment program; 4) attend financial counseling; and 5) visit with Child. At a subsequent FSP hearing on April 30, 2014, the goals established for Mother were: 1) attend drug and alcohol treatment; 2) attend mental health treatment; 3) comply with the CEU; 4) maintain adequate housing; 5) obtain employment; 6) complete Family School and 7) maintain visitation with Child.

On January 28, 2015, DHS filed petitions to terminate involuntarily the parental rights of Mother and Child's unknown Father, and to change Child's goal to adoption. The trial court held a hearing on those petitions on February 12, 2015. DHS presented the testimony of its case manager,

Lawrence Barnes, and adoption agency social worker, Martiba Togga. Mother testified on her own behalf and presented the testimony of her sister, Maternal Aunt.

The evidence presented at that hearing established that Mother had failed or refused to perform her parental duties in that she did not maintain contact with Child and did not adequately address her FSP objectives to correct the conditions that led to Child's placement.

Mother never completed treatment for drug and alcohol abuse, the principal factor that caused DHS to intervene in her case. According to Mother, when Child was adjudicated dependent she turned herself in on an outstanding bench warrant and remained incarcerated until July 9, 2013.[2] (*See* N.T. Hearing, 2/12/15, at 23-24). In spite of admitting that she was actively using cocaine, Mother did not pursue drug and alcohol treatment until December 2013, some eight months after the trial court adjudicated Child dependent, and three months after the establishment of her FSP objectives. (*See id.* at 25-26, 29). When Mother did seek treatment, she was discharged from the program for non-compliance after six months of outpatient treatment. (*See id.* at 10, 27-29). Mother never sought additional treatment and continued to use illegal drugs. (*See id.* at 10, 30). At the termination hearing, Mother testified she last used cocaine four and

_____

[2] We find no evidence that Mother's brief incarceration contributed to her inability or unwillingness to parent Child.

one-half months earlier, or a time in October of 2014. (**See id.** at 30). Mother admitted she did not submit to court-ordered random drug screens as Mr. Barnes had directed, but had submitted to "two or three, if that." (**Id.** at 30; **see id.** at 17-18). In addition, Mother had not reported to the CEU for a dual diagnosis assessment as the trial court ordered at the previous permanency review hearing. (**See id.** at 10).

Mother had not participated in mental health treatment since August of 2014, and provided no documentation of any present treatment. (**See id.** at 11). Mother only started treatment at the urging of her counsel. (**See id.** at 32). By her own account, Mother's sessions with a therapist had been meager, approximately twelve in total, and her contacts with a psychiatrist were for the sole purpose of obtaining psychotropic medications. (**See id.** at 33-34).

Mother was enrolled in Family School for approximately two months but was discharged for lack of attendance. (**See id.** at 10, 14). Mother has no housing, employment, or other means of income. (**See id.**, at 12, 14, 34-35, 37, 39).

Mother's visitation with Child was never consistent; Mother testified it was "on and off." (**Id.** at 39). Mr. Barnes testified that Mother had not attended any agency visits with Child for at least four of five months prior to the termination proceeding, even though she was ordered only to have supervised visits at the agency. (**See id.** at 11, 13, 47). Maternal Aunt

testified that Mother had no informal, unauthorized visits or contacts with Child from October, 2014, through February of 2015. (**See id.** at 59).

Mr. Barnes testified that Child and Maternal Aunt share a mother-child bond. Ms. Togga agreed that Child identifies Maternal Aunt as her mother. (**See id.** at 8, 20). Mr. Barnes testified that the termination of Mother's parental rights will not cause Child irreparable harm. (**See id.** at 12-13). Mother acknowledged Child's close relationship with Maternal Aunt stating, "She's very much bonded with my sister. Spoiled to death she loves my sister. . . . ." (**Id.** at 48). When asked by her trial counsel if she was ready to take care of Child, Mother replied, "Better than I was, yes, do I have to get housing, yes. Do I think I should be in treatment if I could be, yes." (**Id.** at 52).

The trial court entered its decree terminating Mother's parental rights, and the parental rights of Child's unknown father, and changing Child's goal to adoption on February 12, 2015. Mother filed her notice of appeal and statement of errors complained of on appeal on February 26, 2015. **See** Pa.R.A.P. 1925(a)(2)(i).

Mother raises the following questions on appeal:

A. [Whether] the trial court erred in involuntarily terminating [Mother's] parental rights where it was not supported by clear and convincing evidence when [] Mother completed all of her FSP goals[?]

B. [Whether] the trial court erred in involuntarily terminating [] Mother's parental rights where there was undisputed testimony that [] Mother had consistently visited [her] Child and there was

a bond between [] Mother and Child and the termination of parental rights would have a negative effect on the developmental, physical and emotional needs of [] Child[?]

(Mother's Brief, at 8, 13) (most capitalization omitted).[3]

Our standard of review is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences

_____

[3] We take Mother's issues from the body of her brief, rather than as presented in her "Questions Involved." Mother divides the first issue of her "Statement of the Questions Involved" into the two separate arguments in the body of her brief. (*See* Mother's Brief, at 5, 8, 13). She then completely abandons her second question as stated in her "Statement of the Questions Involved," which appears to refer to another case entirely. (*See id.*). For clarity, we have provided her issues as she states them in the body of her brief.

and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

We note our standard of review of a change of goal:

When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. . . .

***In the Interest of S.G.***, 922 A.2d 943, 946 (Pa. Super. 2007).

In her first issue, Mother claims, "[T]here was not clear and convincing evidence that [DHS] established the statutory grounds put forward for the termination of her parental rights." (Mother's Brief, at 7; ***see also id.*** at 8). This issue is waived and lacks merit.

We begin our analysis by noting that "[t]he failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119." ***Commonwealth v. Beshore***, 916 A.2d 1128, 1140 (Pa. Super. 2007), *appeal denied*, 982 A.2d 509 (Pa. 2007) (case citation omitted). "[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." ***Lackner v. Glosser***, 892 A.2d 21, 29-30 (Pa. Super. 2006) (citations omitted); ***see also Chapman-Rolle v. Rolle***, 893 A.2d 770, 774 (Pa. Super. 2006) (stating,

"[i]t is well settled that a failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal") (citation omitted).

Here, Mother has failed to develop a coherent legal argument in that it only contains legal citations to broad general principles. (*See* Mother's Brief, at 8-12). She makes no effort whatsoever to link the facts of her case to the law. In sum, Mother makes no attempt to develop a pertinent argument to support her conclusion that the trial court erred in terminating her parental rights and she has, therefore, waived that argument. (*See id.*). Therefore, her first issue is waived. *See Beshore*, *supra* at 1140; *Chapman-Rolle*, at 774; *Lackner*, *supra* at 29-30. Moreover, the issue would not merit relief.

Mother argues first that the trial court erred when it terminated her parental rights because "it was not supported by clear and convincing evidence when [she] completed all of her FSP goals." (Mother's Brief, at 8) (most capitalization omitted). We disagree.

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition

either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). It is well-settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004) (citation omitted). Further,

A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by

- 9 -

waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs. . . .

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

To terminate parental rights pursuant to section 2511(a)(1), the person or agency seeking termination must demonstrate through clear and convincing evidence "that[,] for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrates a settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties."  *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted).

With respect to subsection 2511(a)(1), our Supreme Court has held:

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998) (citation omitted).  Further,

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

- 10 -

*In re B.N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citations omitted).

Here, the record demonstrates that Mother failed to address her FSP goals. Mother is unemployed, has no source of income and no housing appropriate for Child. (*See* N.T. Hearing, 2/12/15, at 12, 14, 34-35, 37, 39). Mother failed to address her drug use. (*See id.* at 10, 25-28). Mother only briefly sought mental health treatment. (*See id.* at 32-34). Mother's visitation with Child has been inconsistent. (*See id.* at 11, 13, 47, 59). The evidence DHS presented clearly demonstrates that Mother has evidenced a settled purpose of relinquishing her parental claim to Child, or has refused or failed to perform her parental duties. Therefore, we conclude that the court properly found that DHS satisfied its burden to prove the applicability of section 2511(a)(1).

Mother next argues that the court erred in terminating her parental rights because it will "have a negative effect on the developmental, physical and emotional needs of [] Child." (Mother's Brief, at 13). We disagree.

As stated more fully above, the Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not specifically require the evaluation of the bond between parent and child, and although our case law requires such an evaluation, the trial court is not required by statute or precedent to order a formal bonding evaluation

performed by an expert. *See In re E.M.*, 620 A.2d 481, 484-85 (Pa. 1993); *In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008).

In this case, as part of its analysis of subsection (b), the trial court made specific findings as to the credibility of certain testimony:

> The [t]rial [c]ourt did not find [Mother's] testimony regarding visits with [Child] credible (N.T. 2/12/15, p. 65). However, the [c]ourt did find the testimony of [Maternal Aunt], the foster mother, was credible (N.T., 2/12/15, p. 65). Lastly, the [t]rial [c]ourt found the testimony of the DHS case manager and the DHS social worker to be credible.

(Trial Court Opinion, 3/31/15, at unnumbered page 5).

Testimony at the hearing established that Child is happy in her current foster home, where she has lived her entire life, and that she has bonded with Maternal Aunt. (*See* N.T. Hearing, 2/12/15, at 8, 20). Mr. Barnes testified that Child will not suffer irreparable harm if Mother's parental rights are terminated. (*See id.* at 12-13). In addition, "[t]his Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated." *In re K.H.B.*, 107 A.3d 175, 180 (Pa. Super. 2014) (citation omitted). Therefore, we conclude that the trial court properly found that DHS provided clear and convincing evidence that the termination of Mother's parental rights would best meet "the developmental, physical and emotional needs and welfare of [Child]," pursuant to section 2511(b). 23 Pa.C.S.A. § 2511(b).

Accordingly, for the reasons stated, we affirm the order of the Court of Common Pleas of Philadelphia County that terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§2511(a)(1) and (b), and changed Child's goal to adoption.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/5/2015